UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICE BADOUR,

    Plaintiff,                                     Civil Action No. 10-13280

v.                                             HON. THOMAS L. LUDINGTON
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Alice Badour brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On August 11, 2006, Plaintiff filed an application for SSI, alleging disability as of November 20, 2000 (Tr. 95-99). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on April 16, 2009 in Chicago, Illinois before Administrative Law Judge ("ALJ") Ayrie Moore (Tr. 24). Plaintiff, represented by attorney John Wildeboer, testified by teleconference from Flint, Michigan (Tr. 28-47). Vocational Expert ("VE") Thomas Gusloff also testified (Tr. 48-52). On May 1, 2009 ALJ Moore found Plaintiff capable of performing her past

relevant work as a cashier (Tr. 23). On June 23, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on August 19, 2010.

## BACKGROUND FACTS

Plaintiff, born May 24, 1966, was 42 when the ALJ issued her decision (Tr. 95). She completed two years of college and worked previously as a cashier, census taker, and inventory auditor (Tr. 110, 115). Her application for benefits alleges disability as a result of memory problems, depression, a head injury, and degenerative and disk disease (Tr. 109).

### A.     Plaintiff's Testimony

Plaintiff testified that she currently lived with her husband and 15-year-old son (Tr. 28-29). Plaintiff, right-handed, reported that she held a valid driver's license (Tr. 29). She indicated that in addition to graduating from high school, she held an associate's degree in secretarial work (Tr. 29). Plaintiff reported that she last worked as a gas station attendant (Tr. 31).

Plaintiff alleged that "a Harrington Rod fused to [her] spine," scoliosis, and chronic asthma prevented her from working[1] (Tr. 31). She reported chronic pain and difficulty sitting for extended periods (Tr. 31). Plaintiff stated further that her work abilities were compromised by the need to use a nebulizer up to four times each day (Tr. 32). She also alleged a bipolar disorder, anxiety attacks (four times per month) and a closed head injury in 2000 (Tr. 33-34). Plaintiff denied overnight hospitalizations since 1995 (Tr. 34).

Plaintiff reported that she had been seen by a psychiatrist for anxiety bi-monthly for more than ten years (Tr. 35). She denied that she currently received counseling (Tr. 35). In addition to

---

[1] A "Harrington rod" is described as "a surgical implant used to stretch the spine in order to correct abnormal curvature. http://www.spine-health. com/glossary/h/ harrington -rod. "The rod is attached to the spine with hooks inserted into the vertebra at the top of the curve and the vertebra at the bottom of the curve. *Id.*

the above-stated conditions, Plaintiff alleged COPD, neck aches, and migraines, adding that she took Fiorinal for headaches and Vicodin for back pain (Tr. 36). She testified that Vicodin caused drowsiness (Tr. 38). She denied that surgery had been recommended for any of her conditions (Tr. 37).

Plaintiff stated that she was unable to lift more than 10 pounds or sit or stand for more than one hour (Tr. 38). She alleged that she was unable to walk more than 75 feet before experiencing shortness of breath (Tr. 39). She reported difficulty reaching overhead but denied significant manipulative limitations (Tr. 40). She alleged memory problems (Tr. 40). Plaintiff reported that her treating sources had originally imposed a 35 pound weight limit but later opined that she was unable to perform any work (Tr. 42). She admitted to light household chores, but stated that she was unable to lift a laundry basket or grocery shop (Tr. 43-44).

Plaintiff testified that she played computer games but did not have internet (Tr. 45). She reported that she currently performed home exercises and took care of the family's cat and dog (Tr. 45). She reported attending church twice a month (Tr. 46).

    B.    **Medical Evidence**

### 1. Treating Sources

In August, 1995, Plaintiff was admitted for several days of inpatient psychiatric care after experiencing increasing depression (Tr. 147). She was assigned a GAF of 50$^2$ (Tr. 151). Treating notes indicate that she and her husband received food stamps and ADC (Tr. 162). She showed improvement after a medication change, and at the time of discharge, did not show symptoms of depression or anxiety (Tr. 147).

---

$^2$ A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

In September, 2005, Plaintiff reported headaches (Tr. 198). She was advised to lose weight and decrease her sodium intake (Tr. 198). In December, 2005, Plaintiff again sought treatment for headaches (Tr. 180). A CT of the brain was unremarkable (Tr. 180). A January, 2006 CT of the cervical spine was also unremarkable (Tr. 277). March, 2006 treating notes by St. Joseph Medical Clinic staff stated that "[Plaintiff's] complaints [were] out of proportion to physical findings" (Tr. 197). The same notes state that Plaintiff was "stressed" because she "was in danger of losing her job" (Tr. 197). July, 2006 imaging studies of the cervical spine showed only "very early degenerative disc disease" (Tr. 210).

In February, 2007, Plaintiff sought treatment after experiencing chest pains (Tr. 286). An echocardiogram found "no obvious abnormalities" (Tr. 270, 317). Imaging studies of the heart were normal (Tr. 290-292). Treating sources state that Plaintiff had "no limitation" in mobility (Tr. 298). The same month, a sleep lab report, noting Plaintiff's BMI of 43, found the presence of severe sleep apnea (Tr. 265). She was advised to use a CPAP (Tr. 265). In March, 2007, imaging studies of the lungs were remarkable for a "suspicious . . . early infiltrate involving the right lower lobe" (Tr. 325).

In June, 2007, Beth Weaver, P.A. noted the conditions of sleep apnea, fatigue, and depression (Tr. 326). In November, 2007, Weaver noted that Plaintiff had been "very depressed lately" (Tr. 328). In June, 2008, treating notes state that Plaintiff had been off medication since the previous November (Tr. 329). She alleged hip pain and arthritis (Tr. 329). In September, 2008, Weaver observed that Plaintiff's head and neck were supple (Tr. 331). The following month, Plaintiff complained of facial numbness and vertigo (Tr. 332). In November, 2008, Plaintiff sustained a back injury in a bicycle accident (Tr. 411). Imaging studies were negative for fractures (Tr. 411-413). Chiropractic records from the same month indicate that Plaintiff alleged "arm pain, arthritis, asthma, back trouble, bed wetting, carpal tunnel syndrome, digestive problems, ear

infections, fibromyalgia, headaches, heart trouble, hypertension, hip pain, leg pain, migraines, neck pain, nervousness, a pinched nerve, scoliosis, shoulder pain, TMJ, bronchitis" and COPD (Tr. 417).

On April 17, 2009, Beth Weaver completed a medical source statement, finding that Plaintiff could lift a maximum of less than 10 pounds; stand or walk for less than two hours in an eight-hour day; sit for less than six; and had a moderately restricted ability to push and pull in all extremities (Tr. 429). Weaver found that the above limitations had been present for 10 years (Tr. 429).

**Mental Health Records for October, 2007 Forward**

Plaintiff sought mental health treatment in October, 2007 (Tr. 355). Therapist Peggy Dienes noted that Plaintiff experienced mood swings and financial problems (Tr. 355). She was diagnosed with a bipolar disorder (Tr. 356). Plaintiff, advised to find coping skills, was deemed likely to be discharged from treatment within 12 months (Tr. 360). Dienes assigned her a GAF of 38[3] (Tr. 355). The following month, Plaintiff was "clear and coherent," with "less depression" (Tr. 365).

In February, 2008, Plaintiff reported that she had "difficulty obtaining transportation" (Tr. 372). Plaintiff reported feeling "good" (Tr. 372). Plaintiff noted trouble meeting a medical deductible of $185 and difficulty paying bills (Tr. 373-374). In April, 2008, Plaintiff, still "without her medications," exhibited "good mood, appropriate behavior, no depressive behavior," and "clear thoughts" (Tr. 375). Plaintiff denied depression (Tr. 376). The same month, psychiatrist Inpy Sathianatham, M.D. assigned Plaintiff a GAF of 35 (Tr. 380, 400). In May, 2008, Plaintiff reported that she was "doing well," and that Cymbalta helped lift her mood (Tr. 383). June, 2008 treating notes state that despite financial stressors, Plaintiff had "general[l]y been doing well" (Tr. 385). In

---

[3]A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

September, 2008, Plaintiff, noting that her home's power had been shut off for four days, reported that she and her husband were unable to meet their bills (Tr. 394).

### 2. Consultive and Non-Examining Sources

In October, 2006, George Pestrue, Ph.D. performed a consultive psychological examination on behalf of the SSA (Tr. 213-219). Plaintiff reported depression, crying jags, poor concentration, weight gain, and anxiety in crowded places (Tr. 213). She indicated that sexual abuse as a child and young adult contributed to her current psychological problems (Tr. 213). She reported that she read at only a sixth grade level (Tr. 213). She alleged asthma, scoliosis, a closed head injury, hypertension, bladder problems, and migraines (Tr. 214). Plaintiff reported that in April, 2006, she had been unfairly fired from a gas station job, after which she had one "five to six hour" failed work attempt (Tr. 215). She indicated she gardened on a sporadic basis (Tr. 215). She noted that on a typical day, she would make coffee, waken her husband and son, look at the want ads for work, and help her son with his homework (Tr. 216). She denied hallucinations, but noted that she had made a suicide attempt as a teenager (Tr. 216). Dr. Pestrue assigned Plaintiff a GAF of 50.

The following month, a non-examining Physical Residual Functional Capacity Assessment by Jodi Vican found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 231). Plaintiff was limited to frequent (as opposed to *constant*) balancing, stooping, kneeling, crouching; occasional stair climbing; and precluded from climbing ropes, ladders, or scaffolds (Tr. 222). She was limited to occasional reaching (Tr. 223). The Assessment found the absence of visual, communicative, or environmental limitations (Tr. 223-224). Vican, noting that Plaintiff continued to perform household/yard work tasks, shop, drive, and practice typing, found her "partially credible" (Tr. 225).

The same month, a Psychiatric Review Technique by Wayne Hill, Ph.D. found the presence of an affective disorder (depression) and anxiety (Tr. 228, 233). Under the "B Criteria," Plaintiff's restrictions in daily living and concentration were deemed mild with moderate deficiencies in social functioning (Tr. 238).

A Mental Residual Functional Capacity Assessment, also performed by Dr. Hill, found moderate limitations in the ability to concentrate for extended periods, work without distraction, make simple decisions, work without interference from psychological symptoms, interact appropriately with the general public and coworkers, and set realistic goals (Tr. 243). Dr. Hill, reviewing Dr. Pestrue's notes, found that Plaintiff was a good historian (Tr. 244).

### C.   Vocational Expert Testimony

VE Gusloff classified Plaintiff's past relevant work as a cashier as unskilled/semiskilled at the light exertional level; stock work, semiskilled, light/medium; fast food worker, unskilled, light; and inventory clerk, semiskilled/light[4] (Tr. 48-49). The VE stated that his testimony was not inconsistent with the information found in the *Dictionary of Occupational Titles* ("DOT") (Tr. 47). The ALJ then posed the following hypothetical question:

> "[L]ight level exertional work . . . . She can only occasionally climb stairs, can vener climb ladders or ramps or scaffolding. And She can only . . . use her hands overhead only occasionally. And she can only do one to two step tasks. And she needs to use a nebulizer in the morning and . . . evening [and] would have to use an inhaler in between . . . . [S]he should not be exposed to, no concentrated exposure to pulmonary irritants

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

(Tr. 50). The VE testified that given the hypothetical limitations, Plaintiff could perform her former work as a cashier (Tr. 50). If Plaintiff were limited to *sedentary* work, the VE testified that she would be unable to perform any past work (Tr. 51) but could the perform the sedentary unskilled jobs of "preparer for plated ware" (3,000 positions in the regional economy); toy stuffer (4,000); and "touch up screener" (3,000) (Tr. 51-52).

The VE testified that if psychological problems caused Plaintiff to miss more than two days of work each month or required unscheduled breaks of more than five minutes, all work would be precluded (Tr. 52).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Moore found that Plaintiff experienced the "severe" impairments of scoliosis of the lumbar and thoracic spines; degenerative disease in the cervical spine; asthma; obesity; affective disorder; anxiety disorder; and migraine headaches but that none of the conditions met or medically equaled an impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following restrictions:

> "[N]o concentrated exposure to pulmonary irritants; occasional overhead work bilaterally; and one or two step work tasks. Additionally, the claimant must be allowed to use an inhaler and to have one unscheduled break[s] of up to five minutes"

(Tr. 16). The ALJ concluded that Plaintiff could perform her past relevant work as a cashier (Tr. 23).

The ALJ discounted Plaintiff's allegations of disability, citing treating observations that Plaintiff walked without difficulty and imaging studies showing "no acute process" (Tr. 19-20). The ALJ also observed that Plaintiff engaged in a wide range of daily activities and was "a good historian" during a consultive psychological evaluation (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5)

if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. "Acceptable Medical Sources"

Plaintiff faults the ALJ for not discussing Beth Weaver's April, 2009 disability opinion. *Plaintiff's Brief* at 9-10 (*citing* Tr. 429). She argues further that the ALJ ought to have adopted therapist Dienes' October, 2007 finding of extreme psychological limitation. *Id.* at 10-11.

Contrary to Plaintiff's implication, the opinions of Weaver (a physician's assistant) and Dienes (a therapist) are not entitled to treating physician-like deference. Opinions from medical sources such as nurse practitioners, physician assistants, and licensed clinical social workers are not "acceptable medical sources." 20 C.F.R. § 416.913. While these opinions should be considered "on key issues such as impairment severity and functional effects, along with other relevant evidence in the file," the ALJ was not required to accord controlling weight or even discuss them in the administrative decision. SSR 06-03, 2006 WL 2329939. *See also Kornecky v. Commissioner of Social Security,* 2006 WL 305648, *8-9 (6th Cir.2006) ( citing *Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999))("While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each ... opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party'").

Substantively speaking, Beth Weaver's finding that Plaintiff was incapable of lifting even 10 pounds or standing or walking for less than two hours a day stands at odds with large portions of the record. March, 2006 treating notes state that Plaintiff's complaints were "out of proportion to physical findings" (Tr. 197). February, 2007 treating notes state that Plaintiff had "no limitation" in mobility and indeed, November, 2008 records showing that Plaintiff was injured while *bicycle* riding undermine Weaver's finding of disabling exertional impairments (Tr. 298, 411). Weaver's finding disability level limitations as of 1999 is contradicted by the fact that Plaintiff worked until April, 2006 (Tr. 215).

Likewise, the ALJ was not required to discuss or adopt therapist Dienes' October, 2007 intake assessment. The October, 2007 findings of a bipolar disorder and financial stressors are undermined by treating notes from the following month stating that Plaintiff was "clear and coherent" with "less depression" and was "smiling and more focused (sic)" with "no psychosis or delusional thinking" (Tr. 365). The ALJ permissibly noted that despite the low GAF finding, treating records created over the course of following year showed a lesser degree of impairment than found at the October, 2007 assessment (Tr. 21). Accordingly, the ALJ's "failure" to adopt the opinions of either Weaver or Dienes does not present grounds for remand.

### B.   The Mental Impairments

Next, Plaintiff contends that the ALJ erred by failing to accord weight to the GAF score of 38 assigned by Dr. Sathianatham. *Plaintiff's Brief* at 14-16. On a related note, Plaintiff asserts that the ALJ's finding that she had "no [psychological] abnormalities" is unsupported by the transcript. *Id.* at 16-19 (*citing* Tr. 21).

First, the implied argument that the ALJ was required to "adopt" the GAF score assigned by Dr. Sathianatham is unavailing. *See Kornecky, supra,* 2006 WL 305648 (citing *Howard v. Comm'r*

-11-

*of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir.2002))("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score"). Further, in discussing Dr. Sathianatham's findings, the ALJ acknowledged the scores but also cited treating records supporting a lesser degree of limitations (Tr. 21). Further, by itself, I would be inclined to find that the ALJ's erroneous and somewhat mysterious statement that "mental status examinations have disclosed no abnormalities," (possibly a typographical mistake) amounts to harmless error, given that the administrative decision contains a comprehensive, two-page discussion of Plaintiff's mental health records (Tr. 20-21).

However, the analysis does not end here. The ALJ, drawing on both treating and non-examining sources, reasonably found that Plaintiff experienced moderate limitations in concentration, persistence, and pace (Tr. 22). Substantial evidence easily supports this finding. So far, so good. However, the hypothetical question and RFC, omitting all reference to psychological problems other than to limit Plaintiff to "one to two step tasks," did not adequately account for these "moderate" deficiencies in concentration, persistence, and pace as found in the administrative opinion (Tr. 15, 16, 22, 50). *See Varley v. Commissioner of Social Security,* 820 F.2d. 777, 779 (6th Cir. 1987)("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments")(internal citations omitted); *Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir.2004).[5]

---

[5] In making his Step Four finding that Plaintiff could return to her former work, the was ALJ was permitted but not required to use the VE. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *See also Mays v. Barnhart,* 78 Fed. Appx. 808, 813-814 (3rd Cir.2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ"). A hypothetical question's deficiencies, with nothing more, would not invalidate a Step Four finding that a claimant could perform her former

The failure to account for moderate concentrational deficiencies constitutes reversible error. *See Varley, supra.* While the ALJ need not use talismatic language or the phrase "moderate deficiencies in concentration, persistence, and pace" in the hypothetical to avoid remand, *see Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001), "unskilled work," or "simple work" are generally insufficient to account for moderate concentrational impairments. *See Bankston v. Commissioner,* 127 F.Supp.2d 820, 826 (E.D.Mich.2000)(Zatkoff, J.); *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007) (Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D.Or.1999); *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir.1996). Likewise here, the "one to two step tasks" limitation, by itself, is insufficient to address moderate concentrational problems, *i.e.,* staying on task for an entire work shift, the timely completion of tasks, maintaining focus, or other workplace limitations associated with moderate deficiencies in concentration, persistence, and pace.

I recogize that other judges in this district have found that the limitation of "one to two step tasks" is sufficient to account for moderate concentrational problems. *See Sutherlin v. Commissioner of Social Sec.,* 2011 WL 500212, *3 (E.D.Mich. 2011). *Sutherlin,* upholding the Commissioner's findings, noted that a non-examining source had found that despite moderate deficiencies in concentration, persistence, and pace, the hypothetical limitation of one to two step

---

work. However here, because the ALJ explicitly stated that the Step Four conclusion was based on the VE's testimony (Tr. 23), material deficiencies in the hypothetical question would constitute reversible error consistent with a Step Five determination. Hence, the administrative opinion (also containing a Step Five finding that Plaintiff could perform other work) must be based on a hypothetical question supported by substantial evidence. *See Varley, supra; see also Teverbaugh v. Comm'r of Soc. Sec.,* 258 F.Supp.2d 702, 706 (E.D.Mich.2003) (Roberts, J.) ("Because the VE's testimony was the only step five evidence that the ALJ relied upon, the Court cannot rule that there is substantial evidence to support the ALJ's findings").

tasks was sufficient to account for the claimant's psychological deficiencies. *Id.* In contrast here, Dr. Hill's finding that Plaintiff could perform one to two step tasks was apparently based on his finding that Plaintiff experienced *mild* concentrational limitations (Tr. 238-244). The ALJ, relying on psychological treating records post-dating Dr. Hill's assessment, acknowledged a greater of degree of limitation than that found by Dr. Hill. The reversible error lies in her failure to incorporate such limitations into the hypothetical.

The need for a remand is also supported by the fact that the Mental Residual Functional Capacity Assessment, also prepared by Dr. Hill, states that Plaintiff experienced moderate deficiencies in interacting appropriately with public (Tr. 243). Plaintiff's limitations in dealing with public, *i.e,* anxiety attacks in public places, are well supported by the psychological treating records. Although deficiencies in dealing with the public would presumably impact her work as a cashier, this limitation was also omitted from the hypothetical and RFC.

### C. Credibility[6]

Plaintiff argues that the ALJ erroneously discounted her allegations of disability. *Plaintiff's Brief* at 20-29. She revisits the argument that Beth Weaver's findings regarding physical limitations ought to have received controlling weight. *Plaintiff's Brief* at 20-25. She also faults the ALJ for attributing her sporadic mental health treatment to a lack of symptomology rather than her inability to afford medical and psychological care. *Id.* at 27-29.

As discussed above, Beth Weaver's April, 2009 "disability" opinion was contradicted by the substantial evidence. Despite the presence of a Harrington Rod, imaging studies of the spine indicated only mild abnormalities (Tr. 197, 210, 277). Her allegations of problems sitting for

---

[6] Plaintiff's third and fourth arguments, both pertaining to the credibility determination, are consolidated here.

extended periods or walking for any meaningful distance are contradicted, if by nothing else, her ability to ride a bicycle and participate in a wide range of household chores (Tr. 17-18, 31, 39).

Plaintiff's additional argument that the ALJ imputed her spotty treating records to a lack of symptomology rather than money problems is based on language of SSR 96-7p:

> "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to . . . question the individual at the administrative hearing in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. . . . [T]he individual may be unable to afford treatment and may not have access to free or low-cost medical services."

On one hand, the ALJ's two-page discussion of the treating records would appear to provide ample support for the credibility determination. I agree that the transcript contains only modest support for Plaintiff's supposed degree of physical limitation.

In contrast, the discussion of the psychological conditions does not meet the above-cited requirements of SSR 96-7p. The ALJ made several references to Plaintiff's "failure" to take medication or show up for appointments: April, 2008 (wasn't taking medication); June, 2008 (hadn't refilled medication); August - September, 2008 ("missed a number of appointments") (Tr. 21). However, she made no reference to the fact that the same body of evidence shows that at the same time, Plaintiff experienced extreme financial difficulties: February, 2008 (Plaintiff "had very little money to live on")(Tr. 374); May, 2008 (therapist conducting home visit, apparently as a result of transportation problems, gave Plaintiff "samples" of prescribed medication)(Tr. 383); July, 2008 (continued financial problems prevented Plaintiff from filling prescriptions for psychotropic medications)(Tr. 388, 391); September, 2008 (social worker making home visit reported that

Plaintiff's electricity had been cut off four days earlier and lacked funds to have power restored)(Tr. 394).

Discounting Plaintiff credibility on the basis of sporadic treatment without acknowledging that her ability to seek treatment was compromised by financial problems amounts to a distortion of the record. *Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000)(Lawson, J.)(A non-disability finding "cannot be based on fragments of the record").  Because the credibility determination (at least as to the psychological records) appears to have ignored the effect of Plaintiff's financial condition on her ability to seek treatment, a remand for compliance with the above-stated requirements of SSR 96-7p is appropriate.

In closing, the Court must determine whether Plaintiff is entitled to a remand for further fact-finding or an award of benefits. The record contains at least two errors worthy of remand for clarification or correction. However, because Plaintiff's proof of disability is not "overwhelming," I recommend that the case be remanded for further administrative proceedings consistent with Sections **B.** and **C.** of the analysis. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994).

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for further fact-finding, and that Defendant's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505

(6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/R. StevenWhalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: July 18, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on July 18, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on July 18, 2011: **None.**

                                                s/Michael E. Lang
                                                Deputy Clerk to
                                                Magistrate Judge R. Steven Whalen
                                                (313) 234-5217